UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

JENNIFER ROMERO,

                    Plaintiff,

       -against-

P.O. RYAN COURTEN and the CITY OF
NEW YORK,

                    Defendants.

----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21-CV-671 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Jennifer Romero alleges that Defendants violated her constitutional rights by arresting her for marijuana found in a house in which she was a visitor. When officers executed a search warrant at the house, they discovered significant quantities of marijuana, a firearm and ammunition, over $6,000 in cash, and other drug paraphernalia. Everyone present in the house was arrested. Plaintiff ultimately filed a complaint alleging causes of action for, *inter alia*, false arrest, fabrication of evidence, and municipal liability.

      Defendants' motion for summary judgment is presently before the Court. Finding that there is a genuine material issue of fact on the question of whether the arresting officer had probable cause to arrest, the Court recommends denying summary judgment on Plaintiff's false arrest claim and granting summary judgment on her claims for fabrication of evidence and municipal liability.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      On May 25, 2018, just before 5:00 a.m., officers from the New York City Police Department ("NYPD"), including Defendant Police Officer Ryan Courten, executed a search warrant at 32-31 99th Street (the "Premises"), in Queens, New York. (Defs.'

Statement of Material Facts, ECF No. 45-2, ¶ 10 (hereinafter "Defs.' 56.1").) C.M. was a resident of the Premises; he and Plaintiff had been in a romantic relationship, which ended in 2018. (*Id.* ¶¶ 5–6; Pl.'s Resp. to Defs.' Rule 56.1 Statement, ECF No. 35, ¶ 8[1] (hereinafter "Pl.'s 56.1").) The evidence in the summary judgment record shows that Plaintiff did not reside at the Premises.[2] (Pl.'s 56.1, ECF No. 35, ¶ 37.) Defendants represent, however, that "a confidential informant told [Defendant] Courten to expect someone matching [P]laintiff's description to be inside [the Premises] when the warrant was executed," (Defs.' 56.1, ECF No. 45-2, ¶ 8.) Defendants have declined to offer any specifics as to what that description was or how this tip provided probable cause as to Plaintiff's involvement in illegal activity, citing the confidential informant privilege. (*See* Dep. of Ryan Courten Tr., ECF No. 45-5, at 58:22–63:10 (hereinafter "Courten Dep.").) During the search, Plaintiff provided her identification to officers, which reflected her address in the Bronx. (Pl.'s 56.1, ECF No. 35, ¶ 37; Pl.'s Dep., ECF No. 45-6, at 26:22–27:1; *see also* Defs.' 56.1 Resp. to Pl.'s Statement of Additional Material Facts, ECF No. 46-1, at 3 (conceding that "plaintiff provided identification reflecting the referenced address during the alleged underlying incident").)

---

[1] Plaintiff's response to Defendants' statement of material facts at times notes that a fact is "admitted" while declining to respond to other facts. (*Compare* Pl.'s 56.1, ECF No. 35, ¶ 1 (noting that paragraph one is "[a]dmitted"), *with id.* at 1 (skipping paragraph numbers three through seven).) Plaintiff's response also contains typographical errors, including duplicating paragraph 8. (*Id.* at 1.) While Plaintiff's response does not comply with the Local Rule that a response "shall include a correspondingly numbered paragraph responding to *each numbered paragraph* in the statement of the moving party," the Court overlooks Plaintiff's failure to conform to the rule, and to the extent possible, corresponds the paragraphs to Defendants' statement of material facts. Local Rule 56.1(b) (emphasis added); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."), *abrogated in part on other grounds, Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

[2] Defendants neither admit nor effectively refute this fact alleged by Plaintiff. (Defs.' 56.1 Resp. to Pl.'s Statement of Additional Material Facts, ECF No. 46-1, at 3.)

The Premises "is a single-family house consisting of a basement, first floor[,] and second floor." (Defs.' 56.1, ECF No. 45-2, ¶ 3.) The basement has a living room with "an L-shaped sofa, a television[,] and a closet near the TV," as well as a "kitchenette, bathroom, boiler room[,] and small back room." (*Id.* ¶ 4.) The back room is located "down the hallway past the bathroom and boiler room." (Courten Dep., ECF No. 45-5, at 48:6–8.) At the time of the search, Plaintiff and C.M. were sleeping on the sofa in the basement living room. (Defs.' 56.1, ECF No. 45-2, ¶ 9; Pl.'s 56.1, ECF No. 35, ¶ 10.) During the search, the officers recovered marijuana, a pistol, a magazine, ammunition, over $6,000 in cash, and two scales. (Defs.' 56.1, ECF No. 45-2, ¶¶ 19, 22, 24, 26.) The firearm, magazine, and ammunition were recovered from a hallway closet on the second floor, and the currency was recovered from a bedroom on the first floor.[3] (*Id.* ¶¶ 23, 25.) From the basement, the officers found only marijuana, most of which was recovered from the back room. (*Id.* ¶¶ 20–21.) The marijuana in the back room was found in "uncovered plastic buckets and suitcases," and the door to the back room was open at the time of the search. (*Id.* ¶ 21.) Defendants also contend that one plastic bag of marijuana was recovered "from the TV console located in the basement where [P]laintiff had been sleeping" and that the "baggie of marijuana" was in plain view in that location. (*Id.* ¶ 20; Defs.' Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 45-1, at 6 (hereinafter "Defs.' Mem. of Law").) Plaintiff disputes this factual assertion. (Pl.'s 56.1, ECF No. 35, ¶ 20.)

Following the search, Defendant Courten arrested Plaintiff for criminal possession of marijuana in the first degree, criminal possession of a weapon in the

---

[3] The location of the scales was not noted either in the motion papers or on the property voucher. (*See* Defs.' 56.1, ECF No. 45-2, ¶ 26; Property Clerk Invoice, ECF No. 45-16.)

second and fourth degrees, criminal possession of stolen property in the fourth degree, and criminal use of drug paraphernalia in the second degree. (Defs.' 56.1, ECF No. 45-2, ¶ 28.) On May 26, 2018, Plaintiff was arraigned only on the charge of criminal possession of marijuana in the first degree, and on August 17, 2018, Plaintiff was indicted on this charge, which was dismissed on July 29, 2020. (*Id.* ¶¶ 29–31; Online Prisoner Arraignment Form, ECF No. 45-12 (noting the date arraignment closed).)

On February 8, 2021, Plaintiff initiated this action against Defendants. (Compl., ECF No. 1.) On February 6, 2023, the parties certified the close of discovery, and on March 6, 2023, Defendants filed a motion for a pre-motion conference, anticipating a motion for summary judgment. (Status Report, ECF No. 31; Mot. for Pre-Mot. Conference, ECF No. 32.) Following unsuccessful efforts to settle the case, the Honorable Diane Gujarati set a briefing schedule for Defendants' motion for summary judgment. (Oct. 6, 2023 ECF Order; Oct. 25, 2023 ECF Order.) On January 19, 2024, Defendants filed a motion for summary judgment, which Judge Gujarati referred to the undersigned magistrate judge for a report and recommendation. (*See* Notice of Mot., ECF No. 45; Apr. 11, 2024 ECF Order Referring Mot.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, a factual dispute is "genuine" if "'the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). The Court must "view all facts in this case in the light most favorable to the non-movant, resolving all ambiguities in [the non-movant's] favor." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Id.* (alterations and quotation marks omitted).

The movant "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). However, summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Further, Rule 56(c) provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Lener v. Hempstead Pub. Schs.*, 55 F. Supp. 3d 267, 274 (E.D.N.Y. 2014).

When considering whether a movant is entitled to summary judgment, the Court cannot weigh the evidence or make credibility determinations to decide the truth of the matter, but instead must determine "'whether there is a genuine issue for trial.'" *Green v. Town of East Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (quoting *Anderson*, 477 U.S. at 249). District courts are "required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). In addition, courts "may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020).

## II. Analysis

Plaintiff originally brought causes of action for false arrest, fabrication of evidence, conspiracy, and municipal liability. (Compl., ECF No. 1, at 4–6.) Plaintiff's conspiracy claim was dismissed on consent on May 31, 2023. (May 31, 2023 Min. Entry.) Defendants seek summary judgment on Plaintiff's remaining claims. (Defs.' Mem. of Law, ECF No. 45-1, at 1.)

### A. False Arrest

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim because Defendant Courten had probable cause to arrest Plaintiff for constructive possession of the marijuana and because Defendant Courten is entitled to qualified immunity. (*Id.* at 4, 8.) Plaintiff opposes summary judgment on the grounds

that (1) Defendants have not established that Defendant Courten had reasonable cause to believe Plaintiff exercised dominion or control over the marijuana, (2) disputed issues of fact exist, and (3) Defendant Courten is not entitled to qualified immunity. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., ECF No. 43, at 7, 12, 14 (hereinafter "Pl.'s Mem. of Law").)

    1.  *Legal Standards*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false arrest under New York law." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (quotation marks and modification omitted). A plaintiff claiming false arrest under New York law must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quotation marks and alterations omitted). In other words, "a plaintiff claiming false arrest must show . . . that the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). In the § 1983 context, "the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Id.* (quotation marks omitted); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

Generally, officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. The probable cause

standard is objective; the critical question is "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006); *see also Kee*, 12 F.4th at 158 (observing that in assessing probable cause, courts may consider "only the facts 'available to the officer at the time of the arrest and immediately before it'") (quoting *Ashley*, 992 F.3d at 136); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("To ascertain the existence of probable cause, [courts] look at the facts as the officers knew them in light of the specific elements of each crime."). Although an arresting officer need not have proof of every element of a crime to establish probable cause, probable cause requires "more than bare suspicion," and certainly "more than suspicion of some generalized misconduct." *Gonzalez*, 728 F.3d at 155 (quotation marks omitted).

Notably, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Further, given that "probable cause is not a particularly demanding standard," "the eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Harrison v. Incorporated Village of Freeport*, 498 F. Supp. 3d 378, 391 (E.D.N.Y. 2020) (quotation marks omitted).

2.  *Analysis*

Defendants argue that Defendant Courten had probable cause to arrest Plaintiff on a theory of constructive possession of the marijuana in the residence. (Defs.' Mem. of Law, ECF No. 45-1, at 6.) Under the constructive possession doctrine, a person may be found in possession of contraband if there is proof that the individual "exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found." *People v. Manini*, 79 N.Y.2d 561, 573 (1992); *see also* N.Y.

Penal Law § 10.00(8). The parties agree that mere presence at the location of contraband does not establish constructive possession. (Defs.' Mem. of Law, ECF No. 45-1, at 5; Pl.'s Mem. of Law, ECF No. 43, at 8.) "Some factors that courts may consider in determining whether a defendant constructively possessed contraband are the defendant's proximity to the contraband, whether the defendant had keys to the location where the contraband was found, whether the contraband was in plain view, evidence that the defendant had used some of the drugs (when drugs are the contraband at issue), and whether there is witness testimony that the contraband belonged to the defendant." *People v. Maricle*, 71 N.Y.S.3d 211, 213 (App. Div. 3d Dep't 2018); *see also Haskins v. City of New York*, No. 15-CV-2016 (MKB), 2017 WL 3669612, at *5 (E.D.N.Y. Aug. 24, 2017) (noting that circumstances "giving rise to an inference of constructive possession" include "'the presence of documents pertaining to the defendant in the same location as the narcotics,' . . . 'the defendant flee[ing] the premises' upon seeing police officers, and 'whether the drugs are in plain view'" (quoting *United States v. Facen*, 812 F.3d 280, 287 (2d Cir. 2016) (second alteration in *Haskins*)).

In this case, Defendants contend that there was probable cause to arrest Plaintiff based on marijuana that Defendant Courten claims was in plain view on a console table in the room where Plaintiff was sleeping as well as marijuana that was recovered from the back room of the basement.

> a. Marijuana on the Console

Based on the entire summary judgment record, the Court finds that there is a genuine dispute of material fact as to whether there was marijuana in plain view on the console table at the time of the search. In their motion, Defendants contend that "there was a baggie of marijuana in plain view on top of the TV console" in the living room. (Defs.' Mem. of Law, ECF No. 45-1, at 6; *see also* Defs.' 56.1, ECF No. 45-2, ¶ 20.)

Defendants' evidentiary support for this assertion comprises Defendant Courten's deposition testimony and a photo of the console table. (Defs.' 56.1, ECF No. 45-2, ¶ 20.) Defendant Courten testified as follows about the photo: "I believe I took multiple photos of this section and this is the initial photo, before objects are moved at all." (Courten Dep., ECF No. 45-5, at 101:15–17.) Defendants submitted the photo with metadata indicating that the photo was taken at 5:12:30 on May 25, 2018. (Photo, ECF No. 46-3.) Notably, the officers entered the Premises to conduct the search at "approximately 4:54 a.m." (Defs.' 56.1, ECF No. 45-2, ¶ 10.)

Plaintiff's position is that there was no marijuana on the console table prior to the search,[4] and posits that the marijuana was placed on the table "after . . . [P]laintiff's

---

[4] Plaintiff submitted an affidavit attached to her responses to Defendants' statement of material facts. (Pl.'s 56.1 Ex. 4, ECF No. 35, at ECF p. 10.) In this affidavit, Plaintiff states that "[w]hile [she] was present at the premises, that night and early morning, there was no marijuana present on the console adjacent to the TV that was in the basement." (*Id.*) Defendants argue, without citation to any authority, that Plaintiff may not submit an affidavit post-discovery to identify a dispute of material fact. (Defs.' Reply Mem., ECF No. 46, at 4.) This is not supported by Rule 56 of the Federal Rules of Civil Procedure, which states that assertions as to facts presented for summary judgment must be supported by "citing to particular parts of materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). In the summary judgment context, federal courts have "frequently upheld the use of post-discovery declarations," declining to strike such filings without cause unrelated to the timing of the discovery schedule. *Riemensnyder v. Paragon Sys.*, No. 20-CV-109 (MCC), 2022 WL 1123187, at *3 (M.D. Pa. Apr. 14, 2022) (collecting cases and declining to strike declarations not submitted until the summary judgment filing because the complaining party had the opportunity to depose the declarants and did in fact depose one); *see also Ng v. Lahood*, 952 F. Supp. 2d 85, 92 (D.D.C. 2013) (declining to strike a declaration submitted after the close of discovery because "the Federal Rules expressly contemplate declarations in support of summary judgment, regardless of when in the discovery process the motion is filed"). To the extent Defendants are attempting to argue that the sham affidavit doctrine is implicated here, the Court finds that it does not apply given the circumstances of this case. The Court has reviewed the transcript of Plaintiff's deposition and notes that Defendants did not ask her any questions about the marijuana on the console table or whether there was marijuana in plain view. (*See* Pl.'s Dep., ECF No. 45-6.) Furthermore, the factual issues raised in Plaintiff's affidavit are not created "solely" by the affidavit; as discussed herein, the NYPD's own property vouchers corroborate the claim that the officers did not recover marijuana from the console table. *See Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014).

detention."[5] (Pl.'s Mem. of Law, ECF No. 43, at 12; Pl.'s 56.1, ECF No. 35, ¶ 20.) Notably, Plaintiff has identified evidence in the record to dispute Defendants' claim that marijuana was recovered from the console table. Specifically, Plaintiff correctly observes that the NYPD's own police reports and the criminal court complaint do not mention the baggie of marijuana allegedly recovered from the console. (Pl.'s 56.1, ECF No. 35, ¶ 20; *id.* Exs. 4, 5; *see also* Pl.'s Mem. of Law, ECF No. 43, at 12 ("[N]one of the property vouchers or any other police reports or documentation reflect the recovery of marijuana from the console.").) Plaintiff points to several property clerk invoices, which document marijuana recovered from the Premises as follows: (1) marijuana packaged in plastic, quantity "10," field tested positive, no location; (2) marijuana packaged in a clear plastic bag, quantity "1," field tested positive, recovered from "deft's bedroom floor"; (3) marijuana packaged in a clear plastic bag, quantity "1," field tested positive, recovered from "a shelve [sic] in deft closet"; and (4) marijuana packaged in plastic, quantity "24," field tested positive, no location. (Pl.'s 56.1 Exs. 4, 11, 15, 16, ECF No. 35, at ECF pp. 10, 28, 32–33 (capitalization modified).) None of the vouchers appear to identify marijuana found on the console table — either the quantity is greater than one, or the specified location of the marijuana is other than the basement.

Without making a credibility determination, which the Court is not permitted to do at the summary judgment stage, the Court finds that there is a genuine dispute of fact as to whether the marijuana allegedly found on the console table was on the table in plain view at the commencement of the search. While Plaintiff contends that the marijuana was not there, Defendants say that it was, but the criminal complaint, arrest

---

[5] The Court notes that Plaintiff's assertion that the marijuana was moved after her detention is immaterial to the Court's analysis on the question of whether Defendants have established that there is no material fact in dispute regarding the marijuana on the console.

paperwork, and property vouchers do not corroborate Defendants' version of events. Consequently, the Court finds that Plaintiff's factual assertions are more than "a scintilla of evidence" and constitute "evidence on which the jury could reasonably find for [P]laintiff." *See Anderson*, 477 U.S. at 252. For these reasons, Defendants have not established that there was probable cause to arrest Plaintiff for the marijuana on the console table as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

      b.  <u>Marijuana in the Back Room</u>

Defendants also argue that there was probable cause to arrest Plaintiff based on the marijuana in the back room under the doctrine of constructive possession. In their opening brief, Defendants argue that Defendant Courten could have reasonably believed that Plaintiff was a resident of the premises because she was found sleeping there. (*See* Defs.' Mem. of Law, ECF No. 45-1, at 5.) In their reply brief, Defendants argue that some of the marijuana in the back room was in plain view. (Defs.' Reply Mem., ECF No. 46, at 3.) A review of the entire summary judgment record, however, demonstrates that there are genuine disputes of material fact as to whether (1) the marijuana was in plain view given the layout of the Premises; and (2) it would have been reasonable for Officer Courten to assume that Plaintiff was a resident of the apartment given the undisputed information in the summary judgment record evidencing that she informed the officers she lived in the Bronx, not at the Premises.

As the Supreme Court has observed, "probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It is similarly well established that:

> Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable

caution in believing that an offense has been or is being committed by the person to be arrested.

*United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990). In evaluating probable cause for arrest, "[c]ourts must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996); *Jaegly*, 439 F.3d at 153.

Under the circumstances of this case, which are similar to those present in *Haskins*, probable cause could exist if the facts established that "(1) [Plaintiff was] aware of and complicit in the illegal activity, (2) the contraband was in plain view, (3) police officers knew that [Plaintiff was a] resident[] of the [Premises], or (4) [Plaintiff] exercised dominion and control over the area containing the narcotics and [was] not just in proximity to the location of the narcotics." *Cf. Haskins*, 2017 WL 3669612, at *6 (collecting cases finding that constructive possession is *not* established without a showing of at least one of the listed facts). Here, Defendants primarily contend that the marijuana was in plain view and that it would have been reasonable for Officer Courten to find that Plaintiff was in constructive possession based on the fact she was sleeping at the Premises.[6]

    i.    <u>Plain View & "Dominion and Control"</u>

As noted above, in their reply brief, Defendants argue that some of the marijuana in the back room "was in plain view due to the buckets being uncovered and the door

---

[6] Defendants do not argue that Officer Courten's decision to arrest Plaintiff was based on his determination that Plaintiff had actual knowledge of the contraband, and the summary judgment record would not support such a finding. Defendant Courten stated in his deposition that he did not question Plaintiff as to whether she was aware of the presence of contraband at the Premises. (Courten Dep., ECF No. 45-5, at 50:12–16.) He also does not establish in his deposition that Plaintiff touched the marijuana, gave direction to anyone regarding the marijuana, or discussed her awareness as to the guns. (*Id.* at 53:21–54:14.)

to the back room of the basement being open." (Defs.' Reply Mem., ECF No. 46, at 3.) There is no dispute that the door to the back room was open and that marijuana was found in "uncovered plastic buckets." (Defs.' 56.1, ECF No. 45-2, ¶ 21.) Defendants have not, however, identified authority for the proposition that the existence of contraband that is located in a back room "down the hallway past the bathroom and boiler area" from where a person is sleeping, as a guest, gives rise to a reasonable inference of constructive possession. (Courten Dep., ECF No. 45-5, at 48:6–21 (describing the location of the back room and packaging of the marijuana)); *see also Manini*, 79 N.Y.2d at 573 (1992) (describing the standard for constructive possession).

The cases Defendants rely upon are readily distinguishable. None relies solely on whether contraband was in plain view, but all incorporate additional facts that support the proposition that the person had dominion or control over the contraband. In *United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006), the defendant was arrested upstairs and there was cocaine "in plain sight" at the bottom of the stairwell. 455 F.3d at 54, 56. The court found that even if the defendant had not actually seen the bags of cocaine at the bottom of the stairs, "[h]e could see them, and in fact would be expected to see them[] in the regular course of walking through the small home's public spaces." *Id.* at 57.

It is well established that mere presence near contraband is insufficient to establish dominion and control; rather, "presence under a particular set of circumstances" from which constructive possession can be inferred is necessary. *Facen*, 812 F.3d at 287 (quotation marks omitted). As discussed above, many factors could give rise to an inference of constructive possession, including proximity to contraband, whether Plaintiff had keys to the Premises or documents relating to her exist at the Premises, evidence that Plaintiff had used the marijuana, witness testimony that the contraband belonged to Plaintiff, or if Plaintiff fled the Premises upon seeing police.

14

*Maricle*, 71 N.Y.S.3d at 213; *Haskins*, 2017 WL 3669612, at *5 (quoting *Facen*, 812 F.3d at 287). None of these factors exist in the summary judgment record.

Defendants cite two cases for the proposition that there is probable cause to arrest occupants of an apartment where contraband was not in plain view or was in a different room. (Defs.' Mem. of Law, ECF No. 45-1, at 6 (citing *Abdul-Rahman v. City of New York*, No. 10-CV-2778 (ILG), 2012 WL 1077762 (E.D.N.Y. Mar. 30, 2012) and *Chalmers v. Mitchell*, 73 F.3d 1262 (2d Cir. 1996)).) In *Abdul-Rahman*, the court found that there was probable cause to arrest the plaintiff where a package of ten to fifteen pounds of marijuana had been shipped to an apartment, accepted by an occupant of the apartment, and where the plaintiff was seen by police entering the apartment immediately after the delivery was accepted. 2012 WL 1077762, at *6. The Court finds that the circumstances of *Abdul-Rahman* are factually distinct from this case because entry and exit immediately following receipt of a shipment of drugs — especially where police had a warrant to search both the apartment as well as any person "seen exiting, entering, or attempting to enter or exit" the apartment for evidence of drug trafficking — evidences a different level of culpability than sleeping in a common room with drugs located down a hallway past two other rooms. *See id. Chalmers* is similarly of no help to Defendants. There, the court found that the drugs were in plain view, though in a different room, and that the jury could believe that the plaintiff had "fled" to the other room when the police arrived.[7] *Chalmers*, 73 F.3d at 1272. Here, given that the

---

[7] Importantly, because *Chalmers* was a post-trial appeal of the denial of a petition for a writ of *habeas corpus*, the court used a very different standard of review to assess the evidence: whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Chalmers*, 73 F.3d at 1272 (emphasis in original) (quotation marks omitted). Here, the Court may only grant summary judgment for Defendants if *no* reasonable juror could find for Plaintiff. *See Borley*, 22 F.4th at 78. Thus, the court's analysis in *Chalmers* is not readily applicable to the instant case.

undisputed facts reflect that Plaintiff was sleeping at the time the police initiated the search, a case involving facts that suggested a suspect had just left the location where contraband was located is inapposite. (*See* Defs.' 56.1, ECF No. 45-2, ¶ 9.)

In this case, Defendants have not established that it would be reasonable to conclude that Plaintiff, an overnight guest, would have been aware of or have control over the marijuana in the back room, which was found down a hallway and past the boiler room.[8] Given the layout of this specific Premises, and in light of the requirement that the Court must draw all reasonable inferences in favor of Plaintiff, *Kessler*, 461 F.3d at 206, the Court finds that Defendants have not demonstrated an absence of disputed facts on the question of whether it was reasonable to conclude that Plaintiff constructively possessed the marijuana found in the back room. *See Manini*, 79 N.Y.2d at 573 (observing that constructive possession over tangible property may be established by showing that a person "exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found").

### ii. *Whether Plaintiff Was a Resident of the Premises*

In their opening brief, Defendants seem to argue that Defendant Courten could have reasonably believed that Plaintiff was a resident of the premises. (*See* Defs.' Mem. of Law, ECF No. 45-1, at 5 ("It is reasonable for police officers to assume that persons sleeping in an apartment are residents of the apartment and therefore, in constructive

---

[8] In their reply brief, Defendants cite for the first time *Lowe v. City of New York*, No. 17-CV-906 (AMD) (RML), 2020 WL 1536335, at *4 (E.D.N.Y. Mar. 31, 2020). (Defs.' Reply Mem., ECF No. 46, at 3–4.) In *Lowe*, plaintiffs were visiting an apartment when police executed a search warrant. The apartment was a "very small studio apartment"; officers found drug paraphernalia on the kitchen table and an officer "smelled smoke which he thought might be crack cocaine." *Id.* (quotation marks omitted). Notably, the plaintiffs in *Lowe* were both in the kitchen; one was even at the kitchen table. *Id.* These facts are readily distinguishable from those of this case. Here, it is uncontested that Plaintiff was an overnight guest, who was sleeping at the commencement of the search, and the contraband was located "down the hallway past the bathroom and boiler area." (Courten Dep., ECF No. 45-5, at 48:6–9.)

possession of the contraband found therein." (quotation marks and alterations omitted).) Beyond the fact that Plaintiff was sleeping at the Premises at the time of the search, Defendants' sole evidence in support of this contention is that "a confidential informant told [Defendant] Courten to expect someone matching [P]laintiff's description to be inside [the Premises] when the warrant was executed." (Defs.' 56.1, ECF No. 45-2, ¶ 8.) As noted above, however, Defendants' assertion as to this information is entirely conclusory and does not explain how any information provided by the confidential informant could have led a reasonable officer to conclude that Plaintiff was a resident or in control of the Premises. (Courten Dep., ECF No. 45-5, at 58:22–63:10.)

Other than this vague assertion related to the confidential informant, Defendants have not offered any record evidence to show, for purposes of summary judgment, that Defendant Courten reasonably believed that Plaintiff was a resident of the Premises.[9] (*See id.* at 36:4–37:9 (Defendant Courten stating that he does not remember how he learned Plaintiff's name, does not recall her showing identification, does not remember speaking to her at the Premises, does not recall if he had asked her if she lived at the

---

[9] One additional problem with Defendants' argument that Defendant Courten *could have* believed that Plaintiff was a resident is that Defendants marshal no evidence to illustrate that, at the time of arrest, he *actually believed* that she was a resident. Put another way, the evidence in the record does not establish that Defendant Courten reasonably believed Plaintiff was, in fact, a resident of the Premises, which could have formed the basis for probable cause to arrest, or at least arguable probable cause, under the doctrine of constructive possession. Rather, "Defendants' brief mixes and matches facts, legal theories, and theories of probable cause with little mention of the underlying arrest paperwork, court file, or the discovery in this case — all at the risk of reinventing the actual events that surrounded Plaintiff's arrest." *Gibson v. Grant*, No. 20-CV-4421 (DG) (TAM), 2024 WL 1077892, at *15 (E.D.N.Y. Jan. 31, 2024), *report and recommendation adopted*, 2024 WL 1072566 (E.D.N.Y. Mar. 11, 2024). "[A] post-hoc analysis of alternative factual probable cause theories could result in the Court drawing impermissible factual inferences in favor of the non-movant," however, which the Court must not do on summary judgment. *Id.*

Premises, does not recall asking how long she had been present at the Premises, and that he does not recall looking at her identification while she was at the Premises).) In contrast, the record illustrates that Plaintiff told the officers that she lived in the Bronx and provided her identification with her address in the Bronx. (*See* Pl.'s 56.1, ECF No. 35, ¶ 37; Pl.'s Dep., ECF No. 45-6, at 26:22–27:1; *see also* Defs.' 56.1 Resp. to Pl.'s Statement of Additional Material Facts, ECF No. 46-1, at 3 (conceding that "plaintiff provided identification reflecting the referenced address during the alleged underlying incident").) Given the totality of the circumstances here, where it is undisputed that Plaintiff *was not* a resident of the Premises, and that she provided her identification establishing that fact during the underlying incident, there is a genuine dispute of fact on the question of whether it would be objectively reasonable for a prudent officer to arrest her based on the assumption that she was a resident in the face of contradictory evidence.[10] *See Lowth*, 82 F.3d at 569.

*   *   *   *   *

For the reasons discussed above, Defendants have not established that there are no disputed issues of material fact as to whether there was probable cause to arrest Plaintiff for the marijuana in the back room. *See Celotex Corp.*, 477 U.S. at 322.

---

[10] Defendants cite *Caraballo v. City of New York*, No. 10-CV-1885 (SJ) (RML), 2012 WL 12883307, at *2 (E.D.N.Y. June 26, 2012), for the proposition that "it is reasonable for police officers to assume that 'persons sleeping in [an] apartment [are] residents of the apartment and therefore, in constructive possession of the contraband found therein.'" (Defs.' Mem. of Law, ECF No. 45-1, at 5 (quoting *Caraballo*, 2012 WL 12883307, at *2).) The Second Circuit clarified that the officers in *Caraballo* had *arguable* probable cause under circumstances where there were "loose, unmarked pills" in bags and containers in the kitchen, the officers found suspected drugs in a common area of the apartment, the apartment was small, and police had previously found drugs in the apartment. *Caraballo v. City of New York*, No. 12-2939, 2013 WL 1955863, at *2 (2d Cir. May 14, 2013). Against that backdrop, there was arguable probable cause for the purpose of a qualified immunity determination. *Id.* The facts of this case are readily distinguishable as discussed above.

3.  *Qualified Immunity*

"Qualified immunity shields government officials performing discretionary functions 'from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Greene v. Napoli*, No. 11-CV-0792 (NAM) (DEP), 2012 WL 4107595, at *6 (N.D.N.Y. Aug. 2, 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)), *report and recommendation adopted*, 2012 WL 4107722 (N.D.N.Y. Sept. 19, 2012). This circuit finds a right clearly established when "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Wiggins v. Griffin*, 86 F.4th 987, 994 (2d Cir. 2023) (quotation marks omitted). If an official "reasonably believed that his actions did not violate plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken." *Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002). An official would therefore be "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quotation marks omitted).

To assess qualified immunity, courts inquire as to (1) whether "the facts alleged show the officer's conduct violated a constitutional right" and (2) whether the violated right "was clearly established." *Pearson*, 555 U.S. at 232 (quotation marks omitted). Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236; *see also Sanchez v. Nassau County*, 662 F. Supp. 3d 369, 405 (E.D.N.Y. 2023) (analyzing the existence of a genuine factual dispute before turning to qualified immunity) (citing *Franco v. Gunsalus*, 972 F.3d

170, 174 (2d Cir. 2020)); *Richardson v. McMahon*, No. 22-582, 2023 WL 3102910, at *1 (2d

Cir. Apr. 27, 2023). As the Second Circuit has observed:

> It is firmly established that . . . claims of arrest . . . without probable cause
> implicate constitutional rights. Thus, the dispositive issue for purposes of
> the first part of the qualified immunity inquiry is whether, based on the
> facts as alleged by [the plaintiff], [the officer's] actions were based on
> probable cause.

*Loria*, 306 F.3d at 1291 (citation omitted). "[A] police officer is entitled to qualified

immunity on a false arrest claim 'if there was at least arguable probable cause at the

time the officer arrested the plaintiff.'" *Marsh v. City of New York*, No. 18-CV-1883 (HG)

(RER), 2022 WL 3576712, at *3 (E.D.N.Y. Aug. 19, 2022) (quoting *Mitchell v. City of New

York*, 749 F. App'x 75, 77 (2d Cir. 2019)).

For the reasons discussed above, there is a genuine dispute of material fact as to

whether a "person of reasonable caution" could believe that Plaintiff was in

constructive possession of marijuana in this case. *See Weyant*, 101 F.3d at 852. For the

same reasons, the Court finds that there is a genuine dispute of material fact as to

whether arguable probable cause existed to arrest Plaintiff. *See Haskins*, 2017 WL

3669612, at *13; *see also id.* at *13 n.4 (distinguishing cases where "there was no dispute

that the officers found narcotics in plain view" and where "plaintiffs were naked and

asleep in a bed in a bedroom from which the officers recovered narcotics" because, in

*Haskins*, "Plaintiff was fully clothed and asleep in the living room and there is a dispute

as to whether the narcotics were in plain sight"). Given the numerous questions of fact

surrounding the circumstances of Plaintiff's arrest, a jury could find that it was

unreasonable for Defendant Courten to believe he was justified in arresting her. *See

Araujo v. City of New York*, No. 08-CV-3715 (KAM) (JMA), 2010 WL 1049583, at *6

(E.D.N.Y. Mar. 19, 2010) (concluding that the defendants had not established "arguable

probable cause" so as to enjoy qualified immunity where the plaintiff had "plausibly

alleged that under the circumstances, it would not have been reasonable for an officer to have believed [they were] justified in arresting plaintiff"). Accordingly, the Court finds that Defendant Courten has not established that he is entitled to qualified immunity as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## B. Fabrication of Evidence

Plaintiff claims that the police reports falsely state that she "was found in possession of a loaded .45 cal. Taurus firearm, . . . [l]arge quantit[ies] of marijana[,] and drug[] paraphernalia." (Compl., ECF No. 1, ¶ 16 (quotation marks omitted).) Plaintiff further states that Defendant Courten "made statements under penalty of perjury that he saw the plaintiff walking up the stairs from the basement upon his entering the premises" and later admitted that he had not made this observation. (Pl.'s Mem. of Law, ECF No. 43, at 16–17.) Finally, Plaintiff states that Defendant Courten's statements as to Plaintiff's possession of marijuana are unsupported or fabricated. (*Id.* at 16–17.) Defendants argue that they are entitled to summary judgment on Plaintiff's claim of fabrication of evidence because (1) the allegedly fabricated evidence is "not sufficiently material to impact a jury's verdict," and (2) "Plaintiff has not shown that any fabricated evidence caused [her] to suffer a deprivation of liberty." (Defs.' Mem. of Law, ECF No. 45-1, at 10, 12.)

### 1. *Legal Standards*

The elements of a claim of fabrication of evidence are that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). The third element is satisfied when a plaintiff shows "that the allegedly false information is material, such that it would 'likely influence a jury's

decision.'" *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM) (RER), 2023 WL 2390538, at *5 (E.D.N.Y. Mar. 7, 2023) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (alteration omitted)). The fifth element is satisfied by showing a "causal connection between the fabricated evidence and [plaintiff's] deprivation of liberty" — this is shown when "the plaintiff would not have been charged with a particular crime absent the fabrication." *Id.* at *9. "The manufacture of false evidence, in and of itself, . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) (quotation marks omitted); *see also Walker v. City of New York*, No. 11-CV-314 (CBA) (JMA), 2014 WL 12652345, at *9 (E.D.N.Y. Sept. 3, 2024) ("The causation requirement is only met if there is sufficient evidence for a jury to determine that the fabricated evidence, as opposed to evidence that supported a finding of probable cause, caused the plaintiff to be deprived of his liberty.").

2. *Analysis*

a. Possession of a Firearm

Plaintiff alleges in her complaint that Defendant Courten "falsely claimed in police reports[,] including the arrest report," that she "was found in possession of a loaded .45 cal. Taurus firearm." (Compl., ECF No. 1, ¶ 16 (quotation marks omitted); *see also* NYPD Arrest Rep., ECF No. 45-11, at 1 (stating that Plaintiff "was found in possession of a loaded .45 cal Taurus firearm" (capitalization modified).) Defendant Courten's assertion that Plaintiff was in possession of the firearm is, in context, a legal conclusion, which, even if incorrect, cannot form the basis of a fabrication of evidence claim. *See Shapiro v. Goldman*, No. 14-CV-10119 (NRB), 2016 WL 4371741, at *20 (S.D.N.Y. Aug. 15, 2016) ("An allegedly incorrect legal conclusion of analysts, case agents, and prosecutors untethered to an outright fabrication is wholly insufficient.

Otherwise, every incorrect legal conclusion incorporated into a report or affidavit would be a fabrication of evidence.").

Additionally, it is undisputed that Plaintiff's sole charge at arraignment was for possession of marijuana. (Defs.' 56.1, ECF No. 45-2, ¶ 29.) Given that Plaintiff was never charged with a crime related to Defendant Courten's report that she was in possession of a firearm, she cannot satisfy the fifth element of a fabrication of evidence claim, namely, that she suffered any deprivation beyond that caused by the arrest on the marijuana charges. *See Zahrey*, 221 F.3d at 348; *Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017).

> b.  Statement that Plaintiff Was Walking up the Stairs

In support of her fabrication of evidence claim, Plaintiff also alleges that Defendant Courten falsely stated that he observed her walking up the stairs from the basement. (Pl.'s Mem. of Law, ECF No. 43, at 16–17.) Defendants argue that Plaintiff's prosecution "was based on [her] presence at a residence from which a large amount of marijuana was recovered" and that the statement about her walking up the stairs is immaterial. (Defs.' Mem. of Law, ECF No. 45-1, at 11.) The criminal court complaint states that Defendant Courten "observed . . . Jennifer Romero[] walking up the stairs from the basement," and that "he recovered a quantity of marijuana [in excess of ten pounds] from the above[-]mentioned basement." (Criminal Ct. Compl., ECF No. 45-13, at 1 (capitalization modified).) In Defendant Courten's deposition, he acknowledges that he did not personally observe Plaintiff walking up the stairs; rather, ESU told him that she was walking up the stairs. (Courten Dep., ECF No. 45-5, at 96:9–16.)

Even if Plaintiff's contention is true — that Defendant Courten falsely stated that he observed Plaintiff walking up the stairs — whether he personally observed her walking up the stairs from the basement or if ESU told him she was walking up the

23

stairs from the basement, Plaintiff has not identified a genuine issue of material fact in dispute. Based on the summary judgment record and in light of which charges were ultimately brought, the Court finds that Plaintiff has not adduced any evidence to show how the allegedly false statement could have influenced a jury's verdict or that it played a role in the prosecutor's decision to bring charges. *See Torres v. City of New York*, No. 16-CV-6719 (BMC), 2017 WL 4325822, at *6 (E.D.N.Y. Sept. 27, 2017) (declining to find causation where there was nothing "that supports even an inference that [the allegedly fabricated information] factored into the [prosecutor]'s decision to bring charges"). Accordingly, Plaintiff has not shown "that there is a genuine issue for trial" with respect to fabrication of evidence related to this statement. *Brizzi*, 529 F. Supp. 3d at 51 (quotation marks omitted).

c.  <u>Marijuana</u>

Plaintiff seems to argue that Defendant Courten made two false statements with respect to marijuana: (1) that Plaintiff was in possession of over ten pounds of marijuana, and (2) that marijuana was recovered from the console table. (Pl.'s Mem. of Law, ECF No. 43, at 16–17.) The criminal court complaint charges Plaintiff with criminal possession of marijuana in the first degree and states that Defendant Courten "recovered a quantity of marijuana [in excess of ten pounds] from the . . . basement." (Criminal Ct. Compl., ECF No. 45-13, at 1 (capitalization modified).) Like the statement that Plaintiff possessed the firearm, Defendant Courten's assertion that Plaintiff was in possession of over ten pounds of marijuana is a legal conclusion, which, even if incorrect, cannot form the basis of a fabrication of evidence claim. *See Shapiro*, 2016 WL 4371741, at *20.

Plaintiff has not provided any evidence to support the contention that Defendant Courten told prosecutors that marijuana was found on the console in plain view. In fact,

the *absence* of this information from key documents, including property vouchers and the criminal court complaint, is part of Plaintiff's support for her false arrest claim. (*See* Pl.'s Mem. of Law, ECF No. 43, at 13.) As discussed above, neither the police report nor the criminal court complaint mentions the baggie of marijuana from the console, and none of the property vouchers specify that marijuana was recovered from the console table. (Pl.'s 56.1, ECF No. 35, ¶ 20; *id.* Exs. 5, 6, 10–16; *see also* Pl.'s Mem. of Law, ECF No. 43, at 12 ("[N]one of the property vouchers or any other police reports or documentation reflect the recovery of marijuana from the console."); Pl.'s 56.1 Exs. 11, 15, 16, ECF No. 35, at ECF pp. 28, 32–33.) The criminal court complaint reflects that over ten pounds of marijuana were recovered from the basement; a quantity which could not be satisfied by the marijuana on the console table alone. (Criminal Ct. Compl., ECF No. 45-13, at 1.) For these reasons, Plaintiff has not shown any "specific facts showing that there is a genuine issue for trial" with respect to her fabrication of evidence claim related to the marijuana on the console table. *Brizzi*, 529 F. Supp. 3d at 51 (quotation marks and emphasis omitted).

*   *   *   *   *

For all of the foregoing reasons, the Court respectfully recommends granting Defendants' motion for summary judgment as to Plaintiff's fabrication of evidence claim.

## C. Municipal Liability

### 1. *Legal Standards*

The City of New York (the "City") may be liable for unconstitutional actions taken by its employees where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by [the City]'s officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Municipal liability for the actions of a subordinate municipal official under *Monell* "turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). A policymaking official can be implicated through subordinates' conduct by a showing that "the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.* "A municipality may be held liable for inadequate training, supervision, or hiring where the failure to train, hire, or supervise amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Hattar v. Carelli*, No. 09-CV-4642 (VB), 2012 WL 246668, at *4 (S.D.N.Y. Jan. 11, 2012) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In order to defeat summary judgment, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Amnesty Am.*, 361 F.3d at 129 (quotation marks omitted). "Mere 'boilerplate' assertions that a municipality has such a custom or policy which resulted in a deprivation of the plaintiff's rights [are] insufficient to state a *Monell* claim." *Araujo*, 2010 WL 1049583, at *9.

    2.  *Analysis*

    Plaintiff claims that the City has a policy of "arresting all persons present in premises where a search warrant is executed and illegal contraband is found, despite the fact that there is no evidence that all those persons possessed the illegal items and having information that a particular person actually owned and possessed them." (Compl., ECF No. 1, ¶ 34.) Defendants argue that Plaintiff has failed to put forward any

evidence of failures to train or of the described policy. (Defs.' Mem. of Law, ECF No. 45-1, at 14.) Plaintiff argues that Defendant Courten testified "at his deposition that, based on his training upon execution of a search warrant, he is permitted to arrest all the occupants of the premises if the subject or target of the warrant doesn't take responsibility for the contraband and the contraband is accessible to other occupants." (Pl.'s Mem. of Law, ECF No. 43, at 18.)

The relevant portion of Defendant Courten's deposition is as follows:

Q    Is it your training that when you execute a search warrant, where an informant or other intelligence has led you to believe that a particular individual possesses contraband within a home, when you execute a search warrant in such circumstances, is it your training and practice to arrest all the individuals inside the home?

A    That heavily depends on the circumstances.

Q    That's circumstances dependent; right?

A    Definitely.

Q    There's no blanket policy that says you must arrest everybody in the house; correct?

A    Yes.

Q    Can you explain under what circumstances, where you're informed that a particular individual has contraband in a home, based on that, you obtain a search warrant and you go to the home and you find contraband, under what circumstances do you arrest all the occupants of the home?

A    In regards to just contraband?

Q    Anything illegal, whether it's stolen goods, drugs, guns, whatever the subject of the search warrant is?

A    Sure. Inside the household multiple defendants would be arrested, if the contraband, illegal substance or firearms were recovered in the vicinity to their location or in a location they would have access to, such as a hallway closet or commonly used bathroom, under those circumstances, if the subject target or a defendant doesn't take claim to it, is what we will call constructive possession, like if it was in a reachable area.

27

(Courten Dep., ECF No. 45-5, at 16:22–18:6.) The Court does not find that this testimony is sufficient evidence of "a specific deficiency in the city's training program." *See Amnesty Am.*, 361 F.3d at 129. When asked specifically about training and policy regarding arrests in these circumstances, Defendant Courten answered that the outcome "heavily depends on the circumstances" and stated that there is no blanket policy requiring arrest of everyone in the house. (Courten Dep., ECF No. 45-5, at 16:22–17:6, 17:9–11.) Without more, Plaintiff has failed to demonstrate a triable issue of fact as to a policy or specific deficiency in training, and the Court respectfully recommends finding that Defendant the City of New York is entitled to judgment as a matter of law as to municipal liability. *See Celotex Corp.*, 477 U.S. at 322.

## CONCLUSION

For all the reasons discussed herein, the Court respectfully recommends that Defendants' motion for summary judgment be denied as to Plaintiff's false arrest claim and granted as to Plaintiff's claims for fabrication of evidence and municipal liability.

\*     \*     \*     \*     \*

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation]

operates as a waiver of any further judicial review of the magistrate[ judge's] decision"

(quotation marks omitted)).

     **SO ORDERED.**

Dated:  Brooklyn, New York
       July 30, 2024

                          *Taryn A. Merkl*
                        TARYN A. MERKL
                        UNITED STATES MAGISTRATE JUDGE